James G. **HUNT**, Libelant,

v.

**PACO TANKERS, INC.**, Respondent.

No. 63–G–100.

United States District Court
S. D. Texas,
Galveston Division.

Jan. 31, 1964.

Mandell & Wright, Sidney Ravkind, Houston, Tex., for libelant.

Baker, Botts, Shepherd & Coates, Don F. McNiel, Houston, Tex., for respondent.

NOEL, District Judge.

Before the Court are respondent's motions to dismiss for want of jurisdiction and to transfer this libel *in personam*.

Libelant was injured while a seaman aboard one of respondent's vessels. He alleges that his injuries were caused by the negligence of the respondent and/or by the unseaworthiness of its vessel. Libelant filed this action in admiralty *in personam* in the Galveston Division of this, the Southern District of Texas. Process was served upon an agent of the respondent in the Houston Division of this District.

■ Respondent asserts that this Court is without jurisdiction over it, apparently on the ground that it does not do business in the Galveston Division of the Southern District of Texas even though it does do business in the Houston Division. Respondent's position is incorrect. The admiralty jurisdiction of a United States District Court is coextensive with the territorial boundaries of the state within which it sits, and the Court acquires *in personam* jurisdiction by service anywhere in the state.[1] Respondent's motion to dismiss is therefore denied.

■ Respondent further asserts that venue of this action is proper in the Houston Division, not the Galveston Division, and requests transfer of the libel accordingly. Venue, as distinguished from jurisdiction, is a wholly different question. The venue requirements in a libel *in personam* were stated in In re Louisville Underwriters[2] as follows:

"By the ancient and settled practice of courts of admiralty, a libel *in personam* may be maintained for any cause within their jurisdiction, wherever a monition can be served upon the libellee, or an attachment made of any personal property or credits of his * * *."

The latter criterion does not apply here. The first does apply and, literally read, as it must be, provides that an *in personam* libel *"may be maintained * * * wherever a monition[3] can be served upon the libelee."* (Emphasis ours.)[3a] Were it not for this holding by courts of ad-

1. Inland Barge Co. v. Nasbitt, 210 F.Supp. 690 (S.D.Ind.1962); Riinc, Inc. v. Peddie, 195 F.Supp. 124 (E.D.Ill.1961); Belgian Mission for Economic Co-operation v. Zarati Steamship Co., 90 F.Supp. 741 (S.D.N.Y.1950). Contra: Colonial Sand & Stone Co. v. Telesco Fuel and Mason Material Co., 201 F.Supp. 187 (S.D.N.Y. 1962). Admiralty Rule 2 involving service of process in suits *in personam* is silent as to this matter, but 4(f) of the Federal Rules of Civil Procedure provides that "All process other than a subpoena may be served anywhere within the territorial limits of the state in which the district court is held." Jurisdiction in admiralty cases is not less extensive than in civil cases. To the contrary, the courts have consistently ruled that service of process in admiralty cases is far more liberal in many instances than is service of process in civil cases. See Riinc, Inc. v. Peddie, supra.

2. 134 U.S. 488, 10 S.Ct. 587, 33 L.Ed. 991 (1890). See also 2 Benedict on Admiralty § 242 (6 ed. 1940).

3. The term "monition" as used in In re Louisville Underwriters applied to both *in personam* and *in rem* process. Today, only process *in rem* is called a "monition"; process *in personam* is usually called a "citation." 2 Benedict on Admiralty § 278.

3a. The basis for the rule is not the serving of the process but is the "presence" of the respondent, either by maintaining an office, possessing property or doing

miralty, this libel (absent attachment) could not be maintained in the Houston, Galveston or any other Division of this District. The place of service here was the Houston Division, not the Galveston Division.

Now before the Court, sitting in a district divided into divisions, is the question whether venue is proper in one division of a district when *in personam* service absent foreign attachment is made in another division. It is one of first impression.

There is little doubt that service must be made at least within the district of the forum for venue to be proper.[4] While there have been expressions that venue would lie anywhere in a district so long as service is made somewhere in the district,[5] the precise question before this Court was not considered at the time of such expressions. I feel they were merely a convenient but unfortunate manner of stating that a suit may be held at the very place of service.

The purpose of courts of admiralty in adopting what is herein referred to as the "general admiralty venue rule" is well stated by the United States Supreme Court in In re Louisville Underwriters:[6]

"Courts of admiralty are established for the settlement of disputes between persons engaged in commerce and navigation, who, on the one hand, may be absent from their homes for long periods of time, and, on the other hand, often have property or credits in other places. * * * 'Courts of admiralty have been found necessary in all commercial countries, for the safety and

convenience of commerce and the speedy decision of controversies, where delay would often be ruin.' * * * To compel suitors in admiralty (when the ship is abroad and cannot be reached by a libel *in rem*) to resort to the home of the defendant, and to prevent them from suing him in any district in which he might be served with a summons or his goods or credits attached, would not only often put them to great delay, inconvenience and expense, but would in many cases amount to a denial of justice."

Thus, the underlying purpose of the rule was the desire of courts of admiralty to afford a convenient forum for speedy disposition of all admiralty controversies. It was not to afford as many forums as possible for seamen, even to the extent of making venue coextensive with jurisdiction.

In fixing venue for particular causes of action accruing to seamen, Congress has not seen fit to provide them with the largest possible number of forums. For example, the venue requirements established by Congress for Jones Act cases are even more restrictive than those of the general corporate venue statute. The Jones Act provides that actions be brought in "the court of the district in which the defendant employer resides or in which his principal office is located."[7] By contrast, the general corporate venue statute provides that "(c) A corporation may be sued in any judicial district in which it is incorporated or licensed to do business or is doing business, and such judicial district shall be regarded as the residence of such corporation for venue purposes."[8] While

business, at the place the process is served.

4. An examination of any of the cases in note 1 would so demonstrate.

5. For example, see Brown v. C. D. Mallory & Co., 122 F.2d 98 (3rd Cir. 1941); 2 Benedict on Admiralty § 242 (6 ed. 1940).

6. 134 U.S. at 493, 10 S.Ct. at 589.

7. 46 U.S.C.A. § 688. For venue purposes a corporation "resides" only where it is incorporated. Suttle v. Reich Bros. Construction Co., 333 U.S. 163, 68 S.Ct. 587, 92 L.Ed. 614 (1948).

8. 28 U.S.C.A. § 1391(c).

certainly not dispositive of the question, the provision of the Congress with respect to Jones Act venue may be looked to for guidance in determining the policy and intent of the Congress in this area.

Likewise, the courts have not expanded the rights of seamen in this area of venue. For example, in Leith v. Oil Transport Co.,[9] the Court refused to supplement the Jones Act venue requirements with the general ·corporate venue statute. While it is true that in a Jones Act suit brought in admiralty,[10] the general admiralty venue rule will apply, this does not indicate preferred treatment for seamen,[11] for if such treatment were intended to be accorded them, it would have been extended in civil actions as well as those in admiralty. It only indicates a policy on the part of the courts in all admiralty cases, to provide a speedy, convenient forum.

Thus, the determination of this important question of first impression is not to be made in the atmosphere of a compelling policy consideration heretofore created either by the Congress or by courts of admiralty, which would suggest or require that the general admiralty venue rule be so interpreted as to provide as diverse venue as possible for seamen. I feel that the problem here is to give this general venue rule, created by decision of courts of admiralty, a reasonable, common-sense interpretation in the light of the relevant facts [12] and the underlying purpose of venue provisions.

9. 321 F.2d 591 (3d Cir. 1963). For a contrary position see Garland v. Alaska Steamship Co., 194 F.Supp. 792 (D.Alaska 1961).

10. Brown v. C. D. Mallory & Co., supra note 5.

11. The venue rule was developed in admiralty cases not involving seamen's injuries. See Atkins v. Disintegrating Co., 18 Wall. 272, 21 L.Ed. 841 (1873); In re Louisville Underwriters, supra note 2.

12. The Southern District of Texas is not a compact area consisting merely of Houston and Galveston, located only 50 miles apart. In the interest of the administration of justice, the District has been divided into six Divisions, Brownsville, Corpus Christi, Galveston, Houston, Laredo and Victoria. It encompasses 45 Texas counties, stretches a distance of 388 miles from Brownsville to Galveston, embraces an area of 44,108 square miles, according to the 1960 census had a population of 2,757,020 people, and is one of diverse nationalities and economy. 1964–1965 Tex. Almanac 186 et seq.

The figures involved are even better appreciated from the facts that the population of the District is greater than the population of each of 26 states and that the distance between the places where the Court sits in the two most distant Divisions of the District is greater than the width of each of 21 states and the length of each of 30 states. Many of these states contain more than one district. For example, these population and distance factors of the Southern District of Texas are greater than the population width and length of such states as Arkansas which has two districts and 12 divisions, of West Virginia which has two districts, and of South Carolina which has two districts and 10 divisions. These factors are greater than the population and length of Oklahoma which has three districts, and the population and width of Mississippi which has two districts and nine divisions. Moreover, the distance between the places where the Court sits in the two most distant Divisions is greater than the width and length of such states as Indiana which has two districts and seven divisions, Louisiana which has two districts and eight divisions, Massachusetts which has two districts, and Ohio which has two districts and four divisions. Furthermore, the distance factor is greater than the width of such states as Alabama which has three districts and 12 divisions, California which has two districts and five divisions, Georgia which has three districts and 17 divisions, and Illinois which has three districts and four divisions, and is greater than the length of such states as Iowa which has two districts and 10 divisions, Missouri which has two districts and eight divisions, New York which has four districts, North Carolina which has three districts, and Tennessee which has three districts and nine divisions.

When a district is so divided either because of its large area, the distance between points or its population, if venue rules are to serve their true purpose of limiting the locality in which a person is

In discussing the general nature of venue, Professor Moore states [13] "In

state practice venue is normally geared to the county, while in federal practice

required to defend an action against himself, it follows that the division is the appropriate unit for that purpose. This reason has particular force in a district such as the Southern District of Texas. In the case before the Court, the place of service was 50 miles from the Division point. But suppose the agent for service were located in and service had in Brownsville, 388 miles away, or Laredo, almost as far; or, suppose suit were filed at one of those Division points and service had in the Houston Division. In order to defend, the respondents would have to travel farther than across most states.

Also of interest and some importance is the fact libelant is not a resident of the Galveston Division. As a matter of fact, out of nine libels involving this question orally argued before me, only one libelant is a resident of the Galveston Division. Three other of the libelants reside in Houston. In the remaining five, one libelant is a resident of Pasadena (Houston Division); one, Cleburne (Northern District of Texas); one, Lake Charles, Louisiana; one, San Francisco, California; and one, Ballentine, South Carolina. The other cases were AD 63-G–61, 74, 77, 78, 95, 101, 103 and 109.

During oral argument proctors for some argued that since the docket of the Galveston Division is less congested than that of the Houston Division, libelants would normally obtain an earlier disposition of their cases in Galveston, which is a valuable right, and that libelants should not be deprived of this right to choose their venue as between the two Divisions. The latter is a valid argument only if venue is in fact properly lodged in each Division, which in my view is not the case.

Traditionally, the Galveston Division docket has been somewhat less congested than Houston, which may also be said of the Victoria Division and perhaps others. But if the number of suits filed in 1963 is any indication of the future trend, this condition will not long obtain between the Galveston and Houston Divisions, as is demonstrated by the following tabulation of all actions filed in the two Divisions, other than criminal:

| Division | 1962 | 1963 | Increase 1963 over 1962 | |
| --- | --- | --- | --- | --- |
| | | | No. | % |
| Houston | 810 | 870 | 60 | 7.5 |
| Galveston | 163 | 201 | 38 | 23.5 |

Accordingly, it would appear the thought advantage of docket condition, argued as a valuable right accruing to libelants, is of very uncertain duration. In any event, it should not affect the determination of the basic question of admiralty venue presented here.

During oral argument proctors for libelants contended that under the rule that admiralty venue lies in the division where service is actually made, all suits with extraterritorial service upon a respondent through service on the Secretary of State of Texas, pursuant to Article 2031b, Vernon's Tex.Rev.Civ.Stat.Ann., would have to be held in Austin. Such a result would not be advanced any more by this rule than by the one contended for by the libelant, that venue lies anywhere in a district in which service is obtained, for all such suits would have to be brought in the district encompassing Austin, which is not the Southern District of Texas. Hence, when service is obtained under Article 2031b, venue will have to lie wherever suit is filed, and the convenience and appropriateness of that venue will simply have to be tested by a § 1404 (a) motion. Since, according to its § 1, Article 2031b applies only in the absence of an appointed agent for service of process in Texas, I do not envision any abuses resulting from this particular situation. All foreign corporations duly permitted to do business in Texas are required to maintain a registered office and agent in the State. Bus. Corp. Act, Art. 8.08, Vernon's Tex.Rev.Civ.Stat.Ann. Relatively rare would be the instance in which an agent for service would not be available in the State and thus create the possible problem for seamen posed by libelant.

These same proctors urged Gill v. United States, 184 F.2d 49 (2d Cir. 1950), in support of their position, but it provides no comfort to libelants. Its application is limited to cases arising under the Suits in Admiralty Act, 46 U.S.C.A. § 742, for it propounds a particular construction of that Act's specific venue provision arrived at only because of the prohibition contained in § 741 of the Act against seizing a United States vessel. Section 741 provides that "No vessel owned by the United States * * * shall, in view of the provision herein made for a libel in personam, be subject to arrest or seizure * * *."

13. 1 Moore's Fed.Practice 1317.

venue is geared to the district or, where the district is divided into divisions, to a division thereof."

Venue has been held improper under the general corporate venue statute, 28 U.S.C.A. § 1391(c), where suit was filed in a division in which the defendant was not doing business even though such defendant was doing business in other divisions of the same district.[14]

Venue has also been held improper in an *in rem* admiralty action where suit was brought in one division but the vessel arrested in another division of the same district.[15] Although this holding was based upon a perhaps erroneous application of a civil venue statute, it, nonetheless, indicates the absence of any judicial policy extending special consideration to seamen in this area of venue and, also, the feeling of the court that venue should be geared to divisions.

▆ Each time the question has been considered, whether by Congress, courts or scholars, the division has been asserted to be the proper unit for the application of venue provisions. Absent any policy behind the general admiralty venue rule which would dictate otherwise, the same approach should prevail in its application here. As previously discussed, the purpose underlying the general admiralty venue rule was to avoid any hardship which might result to any libelant from having to bring suit at the residence of a respondent. The purpose was not to provide a seaman with multiple forums. Gearing venue to a division rather than a district would not violate the purpose of the rule; it would only bring to fruition that which the rule plainly contemplates, that suit be brought at the actual place of *in personam* service, which is entirely consistent with the general policy that federal venue is ordinarily geared to divisions.

The general admiralty venue rule as now interpreted by this Court would not deprive a seaman of the effective use of Galveston as a forum for an *in personam* libel in a proper case. Under the holding here, such a libel could still be brought in Galveston whenever service upon an agent of a respondent, seizure of an offending vessel, or seizure of any other property of a respondent could be effectuated there. The holding here is limited in scope to the precise question and facts before the Court.

The alternative to gearing venue to a division would be to compel respondents to use the device of transfer under § 1404(a).[16] Such an approach would undoubtedly necessitate a § 1404(a) determination for almost every seaman's case filed in Galveston. This would cause delay, added expense to the litigants, and unnecessary work for the Court. It would therefore appear that a rule gearing venue to divisions should be established, rather than having it depend upon an *ad hoc*, case-by-case 1404(a) determination.

Respondent's latter motion is therefore granted and this libel is ordered transferred to the Houston Division,

---

14. Torres v. Continental Bus System, Inc., 204 F.Supp. 347 (S.D.Tex.1962). This decision is based upon a construction of 28 U.S.C.A. § 1393(a) providing "Except as otherwise provided, any civil action, not of a local nature, against a single defendant in a district containing more than one division must be brought in the division where he resides." Section 1393(a) indicates Congressional endorsement of the division as the proper venue unit.

15. The Willamette, 53 F. 602 (W.D.Wash. 1892).

16. 28 U.S.C.A. § 1404(a) provides: "For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought."