The **PURE OIL COMPANY**, Appellant,

v.

Pascual **SUAREZ**, Appellee.

No. 21446.

United States Court of Appeals
Fifth Circuit.

June 16, 1965.

Rehearing Denied Sept. 7, 1965.

William S. Stone, Joaquin Campoy, New Orleans, La., James L. Hurley, Miami, Fla., Deutsch, Kerrigan & Stiles, New Orleans, La., Fowler, White, Gillen, Hurley & Trenam, Miami, Fla., for appellant.

Arthur Roth, Miami, Fla., S. Eldridge Sampliner, Cleveland, Ohio, for appellee.

Before WISDOM and GEWIN, Circuit Judges, and BREWSTER, District Judge.

GEWIN, Circuit Judge.

The appellee instituted this civil action in the District Court for the Southern District of Florida to recover damages for injuries he received while employed in the capacity of a seaman aboard the vessel S.S. "PURE OIL," owned and operated by The Pure Oil Company. His complaint proceeded on two theories: (1) negligence under the Jones Act, 46 U.S. C.A. § 688, and (2) breach of the shipowner's duty to provide a seaworthy vessel. The company moved to transfer the case to the Northern District of Illinois on the ground that venue was not properly laid in the Southern District of Florida.[1] The trial court denied the motion, but certified the question under 28 U.S. C.A. § 1292(b), and this interlocutory appeal ensued.

The relevant provision of the Jones Act, 46 U.S.C.A. § 688, provides as follows:

"Jurisdiction in such actions shall be under the court of the district in which the defendant employer re-

---

1. The special venue requirements of the Jones Act must be satisfied where a civil action is predicated on both unseaworthiness and Jones Act theories, even though the provisions of the general venue sec- tion would apply in a civil action based solely on unseaworthiness. See Branic v. Wheeling Steel Corp. (3 Cir. 1945) 152 F. 2d 887.

*sides or in which his principal office is located."* (Emphasis supplied.) The parties stipulated that The Pure Oil Company "has transacted a substantial amount of business in Florida and the Southern District of Florida, was doing substantial amounts of business in the Southern District of Florida at the time of the commencement of this action, and hopes to continue doing substantial business therein. * * *" The company also filed an uncontradicted affidavit which states that it is incorporated in Ohio and maintains its principal office in Cook County, Illinois. The sole question for decision is whether the provision of the Jones Act quoted above enables an injured seaman to sue his employer corporation wherever the employer does business or whether his choice of forums is limited to the districts in which the employer is incorporated and maintains its principal office.

■■ Although the quoted provision of the Jones Act literally speaks of "jurisdiction," it was early held to refer only to proper venue. Panama R. Co. v. Johnson, 265 U.S. 375, 44 S.Ct. 391, 68 L.Ed. 748 (1924). Hence, the privilege need not be given effect unless the defendant insists upon it. E. g., Neirbo Co. v. Bethlehem Shipbuilding Corp., 308 U.S. 165, 60 S.Ct. 153, 84 L.Ed. 167 (1939); Panama R. Co. v. Johnson, supra; Wright Federal Courts 128 (1963). It is established that, in the absence of a statutory directive to the contrary, the "residence" of a corporation for venue purposes is limited to the state of its incorporation. See Suttle v. Reich Bros. Constr. Co., 333 U.S. 163, 68 S.Ct. 587, 92 L.Ed. 614 (1948); Ex parte Shaw (Shaw v. Quincy Mining Co.), 145 U.S. 444, 450, 12 S.Ct. 935, 937, 36 L.Ed. 768, 771 (1892).

■ The appellee makes two arguments in support of the district court's denial of the motion to transfer, the first of which can be disposed of in short order. According to appellee, the Jones Act was passed in 1920 to expand and liberalize the relief afforded to seamen for injuries they sustained in their employment. Instead of devising separate standards to be applied in personal injury suits by seamen Congress adopted the expedient of incorporating by reference the more detailed provisions which govern the liability of railroads to their employees.[2] Therefore, appellee argues that the special venue provisions of the Federal Employers Liability Act, under which venue against Pure Oil would undoubtedly be proper in the instant case,[3] are applicable to a civil action under the Jones Act. However, this argument does not adequately accommodate the well-recognized and eminently logical canon of statutory construction that the specific provisions of a statute control exclusively over the broader and more general provisions of another statute which may relate to the same subject matter in the absence of a clear manifestation to the contrary by the legislature. See Bulova Watch Co. v. United States, 365 U.S. 753, 758–759, 81 S.Ct. 864, 867–868, 6 L.Ed.2d 72, 76, (1961); Fourco Glass Co. v. Transmirra Prods. Corp., 353 U.S. 222, 228–229, 77 S.Ct. 787, 791–792, 1 L.Ed.2d 786, 790–791 (1957). As one court has stated, "The short answer to [appellee's] argument is that Congress has seen fit to impose different venue requirements in Jones Act cases. To now hold that the venue requirements under the Federal Employers' Liability Act are controlling would negate the plain language of 46 U.S.C. § 688." Rodriquez v. United Fruit Co., 236 F.Supp. 680, 682 (E.D.Va.1964). We are not persuaded to hold otherwise merely because the two other provisions of 45 U.S.C.A. § 56 have been held appli-

2. "[A]nd in such action *all* statutes of the United States *modifying or extending* the common-law right or remedy in cases of personal injury to railway employees shall apply. * * *" 46 U.S.C.A. § 688 (Emphasis supplied.)

3. The FELA contains much broader venue provisions than those of the Jones Act. Under that statute, venue is proper in the district where the defendant resides, where the cause of action arose, or where the defendant is "doing business" at the time of the commencement of the action. 45 U.S. C.A. § 56.

cable in Jones Act cases.[4] Neither of the subjects covered by those provisions is dealt with specifically in the Jones Act, and they would thus be fairly covered by the general reference to the FELA. See Panama R. Co. v. Johnson, 264 U.S. 375, 392, 44 S.Ct. 391, 396, 68 L.Ed. 748, 755 (1924).[5]

Appellee makes a far more appealing argument, at least from the point of view of statutory construction, in its assertion that the definition of the term "residence" which was added to the general venue statute in 1948, 28 U.S.C.A. § 1391 (c), should be read into the Jones Act venue requirements. Prior to 1948—and, indeed, at the time Congress enacted the Jones Act in 1920—the general venue statute was geared to the residence of either the defendant or, in diversity cases, the plaintiff as well. The residence of a corporation was uniformly restricted to the state of its incorporation, even in Jones Act suits. E. g., Burris v. Matson Nav. Co. (S.D.N.Y.1940) 37 F.Supp. 648. In the course of the general revision of the Judicial Code in 1948, Congress inserted subsection (c) into the general venue statute. That section provides as follows:

"(c) A corporation may be sued in any judicial district in which it is incorporated or licensed to do business or is doing business, *and such judicial district shall be regarded as the residence of such corporation for venue purposes.*" (Emphasis supplied.)

It is the last clause of that subsection which concerns us primarily, for if that phrase can be read as defining the residence of a defendant corporation for the purposes of the Jones Act's venue provisions, then the trial court properly denied Pure Oil's motion to transfer.

If section 1391(c) and the Jones Act venue provision are viewed together in light of the remedial purposes of the Jones Act, the most logical conclusion might well be that the general venue statute did expand the definition of residence in the Jones Act. In fact, all the courts which were faced with the question between 1948 and 1957 read the Jones Act in light of the new concept of corporate residence embodied in section 1391(c).[6]

4. The same section of the FELA which contains its venue provision also contains a provision fixing the limitation period for filing suits and a provision reserving to the state courts concurrent jurisdiction over FELA claims. Both these provisions were applied to the Jones Act in Engel v. Davenport, 271 U.S. 33, 46 S.Ct. 410, 70 L.Ed. 813 (1926). See also Cox v. Roth, 348 U.S. 207, 75 S.Ct. 242, 99 L.Ed. 260 (1955); Panama R. Co. v. Vasquez, 271 U.S. 557, 46 S.Ct. 596, 70 L.Ed. 1085 (1926).

5. Appellee also relies upon the decision of this Circuit in Arthur v. Compagnie Generale Transatlantique (5 Cir. 1934) 72 F. 2d 662 as a justification for construing the venue provisions of the Jones Act as non-exclusive. In that case we held that the Jones Act's venue requirements were inapplicable to a suit in a federal court against a defendant incorporated in a foreign country. We do not deem this case controlling in the instant situation. Where, for example, an American seaman sues an alien corporation under the Jones Act for an injury which occurred in the territorial waters of the United States, the Arthur result would certainly be compelled as a practical necessity; otherwise, the venue

provision of the Jones Act would effectively preclude the seaman from invoking any federal forum if the employer chose to raise his venue objection. Such was surely not the intention of the drafters of the Jones Act. Indeed, the Jones Act venue requirements have also been held inapplicable in state courts. Bainbridge v. Merchants & Miners' Transp. Co., 287 U.S. 278, 53 S.Ct. 159, 77 L.Ed. 302 (1932). We do not think that the Arthur case should be read as suggesting that the venue provisions of the Jones Act do not furnish the exclusive venue requirements in any circumstances. Clearly they apply to a domestic corporation such as we have in the instant case.

6. See Hutchison v. Pacific-Atlantic S.S. Co. (9 Cir. 1954) 217 F.2d 384; Franklin v. Tomlinson Fleet Corp. (N.D. Ill.1957) 158 F.Supp. 850; Phillips v. Pope & Talbot, Inc. (S.D.N.Y.1952) 102 F.Supp. 51; Mincy v. Detroit & Cleveland Nav. Co. (S.D.N.Y.1950) 94 F.Supp. 456; Neset v. Christensen (E.D.N.Y.1950) 92 F.Supp. 78; Bounds v. Streckfus Steamers, Inc. (D.Del.1950) 89 F.Supp. 242; Bagner v. Blidberg Rothchild Co. (E.D.Pa.1949) 84 F.Supp. 973.

In 1957 however, the Supreme Court held that section 1391(c) did not define the residence of a corporate defendant in patent infringement litigation. Fourco Glass Co. v. Transmirra Prods. Corp., 353 U.S. 222, 77 S.Ct. 787, 1 L.Ed.2d 786 (1957). Since the decision in that case, most of the federal courts have concluded that its rationale foreclosed the application of section 1391(c) to Jones Act venue,[7] although a few have reached a contrary result.[8] The only other circuit court which has confronted the issue in light of the Fourco case has read that decision as militating against the application of section 1391(c) to the Jones Act. Leith v. Oil Transport Co. (3 Cir. 1963) 321 F.2d 591. In addition, many courts have applied the Fourco rationale to other special venue statutes, holding that the provisions of the general venue section do not supplement those special statutes.[9]

Hence, a casual glance at the rather formidable array of authorities would suggest that the court in Leith was correct in its strict application of the Fourco result to suits under the Jones Act. Nevertheless, we must disagree with the Third Circuit's interpretation of the

Fourco opinion.[10] While we certainly deem that opinion controlling, we think its rationale compels a result contrary to that reached in Leith.

The special venue statute to which the plaintiff in Fourco sought to apply section 1391(c) provided as follows:

"Any civil action for patent infringement may be brought in the judicial district where the defendant *resides,* or where the defendant has committed acts of infringement and has a regular and established place of business." 28 U.S.C.A. § 1400(b). (Emphasis supplied.)

That section was re-enacted in 1948 along with the general revision of the Judicial Code which resulted in the expanded definition of corporate residence in section 1391(c). When section 1400(b) was re-enacted, the word "residence" was substituted for the word "inhabitant," but the court concluded from an examination of the legislative history of section 1400 (b) that no substantive change was intended by the change in wording. Furthermore, as indicated by the Supreme Court's own review of the reasons for the passage of the predecessor to section

7. Leith v. Oil Transport Co. (3 Cir. 1963) 321 F.2d 591; Barnes v. E. J. Platte Fisheries (N.D.Miss.1964) 237 F.Supp. 390; Rodriquez v. United Fruit Co. (E.D. Va.1964) 236 F.Supp. 680; Blanco v. Gulf Coast Transp., Inc. (W.D.La.1964) 235 F.Supp. 197.

8. Connolly v. Farrell Lines, Inc. (1 Cir.) 268 F.2d 653, cert. denied, 361 U.S. 902, 80 S.Ct. 208, 4 L.Ed.2d 158 (1959); Garland v. Alaska S.S. Co. (D.Alaska 1961) 194 F.Supp. 792. These decisions are of dubious precedent value, however, since neither opinion discusses or cites the Fourco case.

9. E.g., Zonolite Co. v. United States (W.D. Pa.1962) 209 F.Supp. 597 (venue in suits to set aside or enforce ICC orders); United Transit Co. v. United States (M.D. Tenn.1957) 158 F.Supp. 856 (civil actions against the United States); R. J. Coulter Funeral Home, Inc. v. National Burial Ins. Co. (E.D.Tenn.1960) 192 F.Supp. 522 (special venue provisions of the Clayton Act). Generally, the commentators seem to regard the Fourco result as necessary in all situations where special venue

statutes come into play. See 1 Barron & Holtzoff, Federal Practice & Procedure § 80 at 387 (1960); 1 Moore, Federal Practice ¶0.144. However, Professor Moore has criticized the Fourco opinion as unsound. See 1 Moore, Federal Practice ¶0.144 [9], at 1632.

10. We do not minimize the fact that Leith is diametrically opposed to the result reached in the instant case. However, it does seem appropriate to observe that the court in Leith was careful to point out in its statement of facts that the suit was filed in a Pennsylvania federal court, the plaintiff was a resident of Tennessee, the defendants were incorporated and maintained their principal places of business in Louisiana, they were not licensed to do business in Pennsylvania, and the accident occurred while the vessel was docked in the navigable waters of the Ohio River at Paducah, Kentucky. In the course of the opinion in Leith, the court made pointed reference to the facts mentioned: "It did not arise there; the plaintiff does not live there; the defendants are not incorporated there and do not maintain a place of business there." 321 F.2d at 594.

1400(b) in Stonite Prods. Co. v. Melvin Lloyd Co., 315 U.S. 561, 62 S.Ct. 780, 86 L.Ed. 1026 (1942), the special venue section applicable to patent infringement actions was intended as a restrictive measure, designed to place greater limits on venue in patent infringement suits than those which had previously applied under the general venue provisions then in force. The Supreme Court thus concluded:

> "In light of the fact that the Revisers' Notes do not express any substantive change [in § 1400(b)], and of the fact that several of those having importantly to do with the revision say no change is to be presumed unless clearly expressed, and no substantive change being otherwise apparent, we hold that 28 U.S.C. § 1400 (b) made no substantive change from 28 U.S.C. (1940 ed.) § 109 as it stood and was dealt with in the Stonite case."

353 U.S. at 227–228, 77 S.Ct. at 791, 1 L.Ed.2d at 790.

■ We do not feel that the Supreme Court intended to foreclose the application of the expanded concept of a corporate defendant's residence to all special venue statutes. Our reading of Fourco convinces us that the court contemplates an analysis of the relationship of section 1391(c) to special venue statutes in light of the history and purpose of the special provisions.[11] As indicated above, the Court in Fourco focused sharply on the congressional intent that section 1400(b)

have a restrictive effect. Applying this broad principle to the specific venue statute which applies to Jones Act suits, we hold that section 1391(c) furnishes the definition of corporate residence for that statute. When the Jones Act was passed in 1920, the general venue section restricted proper venue over a corporate defendant to the district of incorporation. Hence, the inference is clear that the special venue requirements of the Jones Act, in contradistinction to those relating to patent infringement suits, were expansive and afforded the seaman an additional federal forum in which to present his Jones Act claim—the district of the principal office of his employer. Citation of authority is unnecessary for the proposition that the Jones Act is remedial legislation which is to be construed liberally in favor of enlarging the remedies of the injured seaman. We think it is also significant that the consent doctrine established in Neirbo Co. v. Bethlehem Shipbuilding Corp., 308 U.S. 165, 60 S.Ct. 153, 84 L.Ed. 167 (1939), under which a corporate defendant is deemed to have acceded to venue in the federal courts of a state by appointing an agent and submitting to the jurisdiction of the state courts, was applied to Jones Act suits.[12] Antonana v. Ore S.S. Corp. (S.D.N.Y. 1956) 144 F.Supp. 486; Bennett v. Standard Oil Co. (D.Md.1940) 33 F.Supp. 871; see 1 Moore's Federal Practice ¶0.142 [5–3], at 1492. The courts, on the other hand, have consistently refused to apply Neirbo to defendants in patent infringment litigation. E. g., American

---

11. Such an approach has also been suggested by commentators. See, e.g., Note, Venue in Private Antitrust Suits, 37 N.Y.U. L.Rev. 268 (1962); Recent Decision, 62 Mich.L.Rev. 897 (1964) (criticizing the result in Leith v. Oil Transport Co., supra.)

12. We note that the Neirbo doctrine could conceivably apply in the instant case, but the record is inadequately developed on the question. The parties stipulated that the defendant is "registered with the Secretary of State to do business in the State of Florida." Registration may refer to the statutory scheme embodied in Fla.Stat.

Ann., §§ 47.34, 47.36, and 47.43, under which a foreign corporation must designate an office where process may be served or an agent on whom process may be served as a prerequisite to the maintenance of actions in the state courts. The Neirbo question was apparently not raised or considered in the district court. Furthermore, we cannot determine from the stipulations whether there has been such compliance with the Florida statutes concerning qualification to do business that Neirbo could be invoked. See Moss v. Atlantic Coast Line R.R. (2 Cir. 1945) 149 F.2d 701; Donahue v. M. A. Henry Co. (S.D.N.Y.1948) 78 F.Supp. 91.

Chemical Paint Co. v. Dow Chemical Co. (6 Cir. 1947) 161 F.2d 956; Bulldog Elec. Prods. Co. v. Cole Elec. Prods. Co. (2 Cir. 1943) 134 F.2d 545. In light of these considerations, we do not think the result reached in Fourco is appropriate in the instant case.

Indeed, if a broad reading is not accorded the Jones Act, its remedial purpose may be thwarted by working a great inconvenience on the injured seaman who wishes to present his Jones Act claims in the federal court. In some cases, requiring the seaman to bring his action far from his home might deter his pressing his claims at all because of the prohibitive cost of transporting witnesses and conducting the trial in a distant forum. No greater burden is imposed on the employer than would exist in any other civil action which he might be called upon to defend. Furthermore, if the employer were sued in a forum inconvenient to him, he could invoke the transfer provisions of 28 U.S.C.A. § 1404(a). A restrictive reading of the Jones Act venue provisions, on the other hand, would severely circumscribe the seaman plaintiff's remedies unless, of course, he institutes suit in a state court, where the Jones Act venue requirements would be inapplicable. See Bainbridge v. Merchants & Miners' Transp. Co., 287 U.S. 278, 53 S.Ct. 159, 77 L.Ed. 302 (1932). An injured seaman has the alternative of filing a suit in admiralty in which he seeks relief under the substantive provisions of the Jones Act. In such a situation the venue provisions of the Jones Act would probably not restrict his choice of forums, see, e. g., Brown v. C. D. Mallory & Co. (3 Cir. 1941) 122 F.2d 98; 2 Norris, The Law of Seamen § 675, but the plaintiff would have to forego his right to trial by jury.

■ We think the Jones Act's venue provision was meant to provide a con-venient federal forum for the satisfaction of the seaman's personal injury claims against his employer. It is consonant with these purposes to give the term "residence" as used in the Jones Act an expansive interpretation, and we do not think such a reading of the Jones Act does violence to the rationale of Fourco Glass Co. v. Transmirra Prods. Corp.[13] Both the Fourco opinion and the patent infringement statute adhere to the fundamental principle that an action may be brought against a corporation not only where the corporation resides, but also where the offending corporation has committed acts of infringement (the wrong) and has a regular and established place of business. In the very beginning of the Fourco opinion the Supreme Court pointedly observes that the trial court concluded that "there had been no showing of any acts of infringement in the district of suit * * *" In addition to the stipulated facts mentioned above, the complaint in the instant case alleges that the plaintiff is a resident citizen of Florida, that he was employed in Florida by the defendant in the capacity of seaman, that the defendant is a corporation doing business in the State of Florida, and that the alleged injury arose out of the employer-employee relationship. It is further stipulated that the vessels of the defendant operate in the ports of Florida and in the Southern District, that it sells its products in Florida in that district, and that the defendant "is registered with the Secretary of State to do business in the State of Florida."

There is a shocking inconsistency in a rule of law which permits a corporation to maintain a regular, established place of business in the district in question, transact a substantial amount of business there both before and after the event about which the plaintiff complains and at the time the suit is filed with the ex-

13. Our construction of the special venue provisions of the Jones Act does not render totally meaningless the second predicate for venue in that section. It would still operate to provide an additional forum in which an injured seaman could sue an individual employer; venue as to such an employer would be proper in the district in which his principal office is located as well as the district in which he maintains his residence.

pressed intention to continue doing business in such locale, but allows the corporation to insist on a trial of the factual issues in the district in which it is incorporated or in which its principal office is located. To do so would authorize it "to run with the hare and hold with the hound."

In the doing of substantial business in an area a corporation becomes a part of the mainstream to commerce which affects the welfare of many people including those it may negligently injure. It receives the benefits which normally come to those engaged in business in the area. The right to choose to do substantial business in a particular locality does not have to be exercised. However, once the choice is made it would be unjust to permit the offending corporation to continue its operations, in the course of which it also may be creating liabilities, and at the same time to grant it complete immunity from those liabilities by shielding it with a carapace of technical venue construction. Usually the witnesses, the evidence, and all the facts leading to the ultimate inquiry as to the truth could be presented more effectively and with less inconvenience than would be possible at the residence or principal place of business of the corporation, often a substantial distance from the place of the wrong. Such a principle cuts two ways and may serve both plaintiff and defendant alike.

We note in reaching this result we must assume that the purpose of the second clause of section 1391(c) was to define the residence of a corporate defendant for purposes other than those delineated in section 1391(a) and (b). Such an assumption appears to comport with the wording of the section. Of course, there is no problem of statutory construction present in the instant case which is comparable to that treated in Robert E. Lee & Co. v. Veatch (4 Cir. 1961) 301 F.2d 434, where the question of the applicability of the definition to a corporate plaintiff arose. Indeed the difficulty of applying section 1391(c) to a corporation suing as plaintiff may be, in part at least, accountable for the refusal of courts to apply that section to certain other special venue statutes, such as 28 U.S.C.A. § 1398, which relates to review of ICC orders, and 28 U.S.C.A. § 1402, which governs venue in civil actions against the United States.

 For the foregoing reasons, we think the district court's denial of the motion to transfer was correct. As we read the Jones Act, it now provides that venue with respect to a corporate employer defendant is proper in any district in which it is "incorporated or licensed to do business or is doing business." The denial of the motion to transfer is affirmed, and the case is remanded to the district court for further proceedings.