S.S. **BETHFLOR** et al., Appellants,

v.

Joel **THOMAS**, Appellee.

Joel **THOMAS**, Appellant,

v.

S.S. **BETHFLOR** et al., Appellees.

No. 21876.

United States Court of Appeals
Fifth Circuit.

Aug. 8, 1966.

Frank G. Harmon, R. Gordon Gooch, Houston, Tex., for appellant. Baker, Botts, Shepherd & Coates, Houston, Tex., of counsel.

Newton B. Schwartz, Houston, Tex., for appellees.

Before BROWN and COLEMAN, Circuit Judges, and MORGAN, District Judge.

JOHN R. BROWN, Circuit Judge:

The Shipowner, succeeding in its forum shopping by its motion to transfer an admiralty cause from the division where it would be tried by the regularly assigned Judge to a nearby division where it would be assigned by lot for trial by one of four or five Judges,[1] complains that the District Court erred in allowing the Libellant to dismiss without prejudice when the intended purpose was to forum shop some more either to the State Court or to a Federal Court in another district. The forum shopping still goes on, the last move being the removal to the Federal District Court by the Shipowner of the newly filed State Court suit. Presumably the District Judge below thought that these parties, neither of whom seemed to be the least bit interested in acquiescing in the forum chosen by the adversary, should be left to their own (and skilled) devices. The test being one of abuse of discretion, this case does not remotely approach that awesome state, and we accordingly affirm.

Sometime, somewhere, to be tried is the claim by Thomas that due to negligence of the Shipowner or unseaworthiness of the SS BETHFLOR, or both, he sustained injuries on April 30, 1962, while a member of the crew of that vessel. Pursuing the course open to him, 46 U.S. C.A. § 688, 45 U.S.C.A. §§ 51, 56; 28 U. S.C.A. § 1445(a), Thomas filed his suit in the State Court in Houston, Texas (Harris County) on June 14, 1962. Appearance was entered by one of the three defendant companies (not the Shipown-

1. Docket conditions, likely trial date, etc., not any supposed predilections of any of the several Judges seems to have been the contentious factor.

er), and the parties, represented then and always by the same counsel, apparently were quite active in the pretrial preparation of that case including the taking of extensive depositions. As is permitted under the Texas State practice,[2] Thomas sought, and the State Court granted, his motion to take a nonsuit or a discontinuance.[3]

Meanwhile 50 miles to the South and adjacent to the sea, Thomas on July 29, 1963, in the Federal District Court for the Southern District of Texas, Galveston Division, filed his libel in personam against the Shipowner (and two related companies) and in rem against the SS BETHFLOR. Process in personam was served by the Marshal on an agent of the Shipowner residing in Houston, within the Houston Division.[4] Judge Noel, the

Judge regularly assigned to the Galveston Division by an order of the Judges of the Southern District, upon the motion of the Shipowner, transferred the case on January 31, 1964, from the Galveston to the Houston Division where, under the practice adopted by the Judges, the case fell by lot to Judge Ingraham. This transfer was based on the fact that the service of process in personam had been effected by the Marshal on the Shipowner's agent residing in Houston, and on the authority of Judge Noel's opinion of the same date in Hunt v. Paco Tankers, Inc., S.D.Tex., 1964, 226 F.Supp. 279. This transfer may have triggered the request by Thomas of April 28, 1964, which resulted in the entry by Judge Ingraham on June 23, 1964, of the order now under review allowing the libel to be "dismissed without prejudice."[5] In any

---

2. Tex.R.Civ.P. 164.

3. The State Court order, entered on August 5, 1963, the same day that the nonsuit motion was filed, recited that the cause "is hereby dismissed without prejudice to the right of Plaintiff to re-file or have re-filed same in Admiralty No. 63–G–61 now pending in the United States District Court, Southern District of Texas, Galveston Division, or in any State or Federal Court or Admiralty Court of the United States having jurisdiction of the matters asserted * * *."

4. The Libellant's briefs suggest that his proctors requested that process be served, and seizure of the vessel in rem be effected, during the time the vessel was transiting the Galveston roadstead bound for Houston, but that the United States Marshal, on the advice of his counsel, the United States Attorney, declined to do so because of possible danger to navigation from serving process on, over, or against a vessel underway. In view of feats now almost legendary in the 175 years of the colorful office of the United States Marshal, this may come as somewhat of a surprise, if not dubious legality, especially since pilots, immigration inspectors, customs officers, and an assortment of maritime service personnel routinely make the step from the launch deck onto the vessel's Jacob's ladder. And for the fainthearted there is still the right of the Marshal, with or without aid from the Customs, Coast Guard, or both, see e. g.,

28 U.S.C.A. § 547(b) to request that the vessel stop to permit the Marshal to board for execution of court orders and process. If, as the District Court held (see note 5, infra), the *place* of service determines Division venue, then parties ought not to be thwarted in their expressed request by unilateral decisions of the Marshal or other court functionaries.

5. Consistent with the tit-for-tat, the Big Roland for the little Oliver, that seems to characterize these advocative activities, Thomas as a reflex to the Shipowner's instant appeal filed an abortive cross-appeal by notice of July 6, nearly 6 months after the transfer order of January 31, 1964. Since submission, Thomas has filed a formal motion to dismiss the cross-appeal which, although perhaps superfluous under the circumstances, we grant. In doing so, however, we think it appropriate as a matter of judicial administration, see note 12, United States v. Barnett, 1964, 376 U.S. 681, 695, n. 12, 84 S.Ct. 984, 991, n. 12, 12 L.Ed.2d 23, 32–33, n. 12, to state that we are left in much doubt as to the soundness of the principal theme of *Paco Tankers* that venue in an admiralty cause depends on the accident of the place of service of process within the District.

*Paco Tankers* is structured on three doubtful premises. The first is that, applying 28 U.S.C.A. § 1393(a) which states that a "civil action * * * against a single defendant in a district

event Thomas' motion took a twin-screw approach—a request that the cause be transferred from the admiralty to the civil side for a jury trial or that it be dismissed without prejudice to permit refiling in an appropriate state or federal court. The papers recited that it was being done at the express request of Thomas since he, personally, had now concluded that he wanted a jury trial.

Not unexpected, this precipitated another flood of motions, counter-motions, replies and sur-replies as to why it should and should not be done. Stressed greatly by the Shipowner was the claimed inconvenience and added cost from having appeared already in two forums with the prospect of still a third, or perhaps a fourth one downstream. Countering that, the Judge was made to see

containing more than one division must be brought in the division where he resides," it is assumed that "where [the defendant] resides" is synonymous with the residence of the human agent upon whom service was had. But § 1391 does not so prescribe and, indeed, the corporate venue statute is broadly stated in terms of districts, not divisions. "A corporation may be sued in any judicial district in which it is incorporated or licensed to do business or is doing business, and such judicial district shall be regarded as the residence of such corporation for venue purposes." 28 U.S.C.A. § 1391(c). Second, considering the flexibility of the admiralty and, indeed, the very colorful observations about the necessity for such courts being open freely for suits by or against those in maritime commerce with none of the impediments characteristic of common-law courts (see, e. g., Ex parte Louisville Underwriters, 1890, 134 U.S. 488, 493, 10 S.Ct. 587, 589, 33 L.Ed. 991, 994, as quoted, 226 F.Supp. at 281; see also 2 Benedict, Admiralty §§ 288–92, at 345–62 (6th ed. 1940), the Court assumes that this policy will best be implemented by premising division venue on the place of service. But we cannot, as did the District Court in *Paco Tankers*, read *Louisville Underwriters* in the narrow terms of venue, and certainly not division venue. In the excerpt from *Louisville Underwriters* so heavily relied on, the Court said:

"By the ancient and settled practice of courts of admiralty, a libel *in personam* may be maintained for any cause within their jurisdiction, wherever a monition can be served upon the * * * [respondent], or an attachment made of any personal property or credits of his; and this practice has been recognized and upheld by the rules and decisions of this court."

134 U.S. at 490, 10 S.Ct. at 588, 33 L.Ed. at 993.

Process is coextensive with the district and since this is a place "wherever a monition can be served upon the * * *

[respondent]," supra, it follows that "suits in personam, without prayer for an attachment, may be brought in any district in which proper service can be had upon the respondent." 2 Benedict, Admiralty § 242 at 78–79 (6th ed. 1940). Venue statutes, such as §§ 1391(a), (b), prescribing "that (with certain exceptions) no civil suit shall be brought in any other district than that whereof the defendant is an inhabitant, * * * [do] not apply to suits in admiralty." Ibid. See The Roosevelt, S.D.N.Y., 1938, 23 F. Supp. 620, 1938 AMC 1241; Pardonnet v. Flying Tiger Line, Inc., N.D.Ill., 1964, 233 F.Supp. 683, 688. The new amalgamated admiralty-civil rules, see note 6, infra, do not change this. See F.R.Civ.P. 82. Except for The Willamette, W.D. Wash., 1892, 53 F. 602, a decision *Paco Tankers* correctly suspects is a "holding * * * based upon a perhaps erroneous application of a civil venue statute," 226 F.Supp. at 284, *Paco Tankers* is the first and only case we have been able to find introducing the highly localized characteristic of division into a judicial structure judge-designed to meet the worldwide demands of maritime commerce. Since this place-of-service-of-process-venue divisional rule excludes service by writ of foreign attachment, a thing accomplished ordinarily by a seizure of the vessel, little is left of the concept of inconvenience to the respondent and where that is present, transfer for equitable reasons can be obtained under 28 U.S.C.A. § 1404(a). Continental Grain Co. v. Federal Barge Lines, Inc., 5 Cir., 1959, 268 F.2d 240, 1959 AMC 2158, aff'd, 1960, 364 U.S. 19, 80 S.Ct. 1470, 4 L.Ed.2d 1540, 1961 AMC 1. Third, involving directly seamen's cases, *Paco Tankers* found congressional policy to localize these actions as had the Third Circuit in Leith v. Oil Transp. Co., 3 Cir., 1963, 321 F.2d 591, 1964 AMC 2152. But this has now fallen before Pure Oil Co. v. Suarez, 5 Cir., 1964, 346 F.2d 890, aff'd, 1966, 382 U.S. 972, 86 S.Ct. 549, 16 L.Ed.2d 474.

that it was really just one claim after all, handled by the same lawyers, each of whom were responsible for some of the movement from one courthouse to another, and all the while the merits of the case were being developed by pretrial preparation under stipulations which freely allowed the use of depositions taken in either or both of the proceedings. The Judge, an experienced hand from long observation of such jousting, presumably anticipated that wherever the case went, so went the Shipowner's lawyers too, so that, except for travel time and some mileage, the chances were that little additional cost in time or effort would be incurred. The Shipowner's brief bears out the soundness of the Judge's prescience since we are informed that in the State Court suit subsequently filed in Beaumont, Texas, and removed by the Shipowner to its forum choice, the Eastern District of Texas, there is now pending a motion by the Shipowner to transfer this case back once again to Houston under 28 U.S.C.A. § 1404(a).

It is an understatement to record that no one in this case is happy with the other man's forum.

Judge Ingraham was no novice in the trial or preparation for trial of seamen's cases or as an interested bystander in this advocative sparring. Presumably he felt that, having previously stipulated that depositions and other materials obtained in the preparation of the first State Court trial could be used in the admiralty cause, the parties would see the sense of a similar procedure in the third case about to be instituted. Consequently, he could see no real harm or prejudice except, perhaps, that which might come from the presence of a jury as the resolver of the fact, rather than a Judge. In any event, he was made conscious of the principle that an admiralty cause may have "proceeded to the point beyond which libelant had lost \* \* \* [the] right to a non suit," Ideal Cement Co. v. Home Ins. Co., 5 Cir., 1950, 183 F.2d 137, 138, 1950 AMC 1445, 1447, or, as phrased somewhat differently by the Ninth Circuit, "the libelant is entitled to dismiss as of right unless the litigation has gone so far that substantial rights have accrued to the respondent under the libel already filed," Medina v. Erickson, 9 Cir., 1955, 226 F.2d 475, 483, 1955 AMC 2211, 2221. The dismissal without prejudice came only after consideration of all factors so the action taken here bears no resemblance to the dismissal as a matter of right which "highly unsatisfactory practice has been curbed by Rule 41(a) (2)," 5 Moore, Federal Practice § 41.05 [1], at 1054 (1964 ed.); see 2B Barron & Holtzoff, Federal Practice and Procedure, § 911 (1961 ed., Wright rev.).

Time and tide wait for no man, or for that matter no court, so if—and the if would be a big one—there was ever any real difference between the factors working on the discretion of the careful Judge while facing attorneys representing plaintiffs and defendants rather than soon-to-be-extinct proctors representing libellants, respondents, or claimants, the blending of admiralty and civil rules on July 1, 1966, memorializes the end of it.[6]

The Judge was entitled to conclude that the dismissal without prejudice was really without prejudice. To anchor our affirmance, that is the bitter end.

Affirmed.

6. The old Rules of Civil Procedure did not apply to suits in admiralty. F.R.Civ.P. 81(a) (1). The new Rules, adopted by the Supreme Court on February 28, 1966, H.R.Doc. No. 391, 89th Cong., 2d Sess., expressly apply to admiralty proceedings, F.R.Civ.P. 1, except to the extent that they are inconsistent with the Supplemental Rules for Certain Admiralty and Maritime Claims, F.R.Civ.P. A. See 39 F.R.D. 69 et seq. Thus, old Rule 41(a), unchanged by the 1966 amendments, now governs all admiralty actions.