**United States Court of Appeals**
**Fifth Circuit**

**F I L E D**

**July 9, 2007**

Charles R. Fulbruge III
Clerk

IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

No. 06-31019
Summary Calendar

RUFUS DAVIS, JR,

                Plaintiff-Appellant,

                        v.

EGL EAGLE GLOBAL LOGISTICS LP,

                Defendant-Appellee.

Appeal from the United States District Court
for the Eastern District of Louisiana
No. 2:06-CV-2888

Before DeMOSS, STEWART, and PRADO, Circuit Judges.

Per Curiam:[*]

        Plaintiff-Appellant Rufus Davis Jr. ("Davis") appeals from the

district court's grant of summary judgment in favor of Defendant-

Appellee EGL Eagle Global Logistics, L.P. ("EGL").  Davis contends

that the district court erred in two respects.  First, according to

Davis, the district court erroneously determined that the Federal

Arbitration Act ("FAA"), 9 U.S.C. § 1, et seq., applied to his

---

[*]Pursuant to 5TH CIRCUIT RULE 47.5, the court has determined
that this opinion should not be published and is not precedent
except under the limited circumstances set forth in 5TH CIRCUIT
RULE 47.5.4.

1

claim because he was an independent contractor, and not an employee of EGL. Second, Davis argues that the district court erred in rejecting his argument that his contract with EGL was unenforceable because it was unconscionable, ambiguous, internally inconsistent, and lacked mutuality. We AFFIRM the judgment of the district court for the reasons stated below.

## I. FACTUAL AND PROCEDURAL BACKGROUND

On September 22, 2003, Davis and EGL entered into a contract entitled "EGL Global Logistics LP Agreement for Leased Equipment and Independent Contractor Services (Pick-up & Deliver)" ("Agreement"). As indicated by the title, the Agreement consisted primarily of a lease of Davis's vehicle to EGL for the purpose of shipping goods, and an agreement that Davis provide transportation services for the leased vehicle, either by driving himself or by hiring another person to drive. The Agreement stated that EGL would pay Davis sixty percent of the total amount that it received for each shipment picked-up or delivered by Davis.

With respect to the relationship between the parties, Section I of the Agreement attempted to create an independent contractor relationship. In support of this intention, the Agreement included a provision, written in bold, capital letters and separately initialed by both Davis and EGL, requiring Davis to notify EGL if he believed at any point that a relationship other than an

2

independent contractor relationship existed.[1]

The Agreement also included three appendices which were signed and dated on the same day as the Agreement.  Appendix I identified the leased vehicle.  Appendix II listed the expenses that EGL could deduct from any compensation due to Davis.  Finally, Appendix III specified the rate of compensation paid to Davis for each shipment picked-up or delivered.

Two additional sections of the Agreement are of importance to this appeal.  Section 4.07 of the Agreement provides that all settlements--that is, compensation due less authorized deductions-- are final and forbids Davis to make any claim for additional settlement monies "unless Contractor [Davis] notifies EGL in writing by certified mail of any discrepancies or additional claims within fifteen (15) days of settlement of computation or said settlement by EGL."  Section 6.07 of the Agreement mandates, "any controversy or claim arising out of or relating to this Agreement . . . shall be determined and settled in accordance with the Commercial Arbitration Rules of The American Arbitration Association."  Section 6.07 further states that "[w]ritten notice of a demand for arbitration must be mailed to the other party and

_____

[1]The provision stated:

> IF AT ANY TIME DURING THE TERM OF THIS AGREEMENT CONTRACTOR IS OF THE OPINION THAT SOMETHING OTHER THAN AN INDEPENDENT CONTRACTOR RELATIONSHIP EXISTS BETWEEN CONTRACTOR AND EGL, CONTRACTOR SHALL IMMEDIATELY NOTIFY THE MANAGER OF SHARED RESOURCES OF EGL.

3

the American Arbitration Association within ninety (90) days of the occurrence of the claimed breach or other event giving rise to the controversy or claim." Failure to give the written notice of demand for arbitration within the ninety-day period erects an absolute bar to the institution of any proceedings.

Davis and EGL performed under the contract until December 20, 2004, at which time the Agreement was terminated.

On January 3, 2006, Davis filed a putative class action suit in Louisiana state court alleging that Davis and other class members (EGL's independent contractor drivers over the past ten year period) had been underpaid.[2] EGL then removed the suit to federal district court and filed a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6). EGL contended that dismissal was warranted because the Agreement mandates arbitration and Davis failed to make a timely demand for arbitration. The district court treated EGL's motion to dismiss as a summary judgment motion under Federal Rule of Civil Procedure 56(c).

Thereafter, the district court granted EGL's summary judgment motion and dismissed Davis's complaint. The district court based its ruling on the conclusion that, as a matter of law, Davis was an independent contractor under the Agreement. Therefore, the Agreement's arbitration provision was valid and enforceable under

___

[2] As explained by the district court, this suit was never certified as a class action despite being filed as such, nor did Davis make a showing that class certification would be appropriate.

4

the FAA, and the exception for "contracts of employment" of interstate commerce workers did not apply to Davis, an independent contractor. Davis now appeals.

## II. JURISDICTION AND STANDARD OF REVIEW

Davis appeals from a final judgment of the district court, so this court has jurisdiction under 28 U.S.C. § 1291.

We review the district court's grant of summary judgment de novo. Chacko v. Sabre, Inc., 473 F.3d 604, 609 (5th Cir. 2006). A grant of summary judgment is warranted if the evidence discloses "no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c); see Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). A genuine issue of material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). In ruling on a summary judgment motion, courts shall not weigh the evidence or make credibility determinations. Id. at 255. Furthermore, all justifiable inferences are made in favor of the nonmoving party. Id.

## III. DISCUSSION

Generally, the FAA "compels judicial enforcement of a wide range of written arbitration agreements." Terrebonne v. K-Sea Transp. Corp., 477 F.3d 271, 278 (5th Cir. 2007) (internal quotation marks omitted). The Supreme Court has recognized that

5

Congress enacted the FAA in order to "reverse the longstanding judicial hostility to arbitration agreements." Gilmer v. Interstate/Johnson Lane Corp., 500 U.S. 20, 24 (1991). Accordingly, we have noted that the FAA "establishes a federal policy favoring arbitration." Terrebonne, 477 F.3d at 285.

Though the FAA establishes a federal policy favoring arbitration, Section 1 of the FAA does not, however, "apply to contracts of employment of seamen, railroad employees, or any other class of workers engaged in foreign or interstate commerce." 9 U.S.C. § 1. In Circuit City Stores, Inc. v. Adams, 532 U.S. 105, 119 (2001), the Supreme Court construed the extent of Section 1. The Court rejected the view that Section 1 excluded all employment contracts from the FAA. Instead, the Court held that Section 1 "exempts from the FAA only contracts of employment of transportation workers." Id.

In this case, although the Agreement contains an arbitration provision, Davis argues that he is exempt from arbitrating his claim because he is not an independent contractor but an EGL employee. As a truck driver employed by EGL, Davis maintains that he is exempt from the FAA's reach because he was a transportation worker.

## A.    Employment Status

The district court rejected Davis's contention that he was an employee of EGL, holding instead that he was an independent

6

contractor.  In so doing, the district court appears to have improperly weighed or made credibility determinations of some of the factual statements in Davis's affidavit.[3]  See Anderson, 477 U.S. at 255.  Consequently, we have some doubts as to whether, given a proper consideration of Davis's statements, the summary judgment can be affirmed on employment status grounds.  The record shows, however, that EGL proffered several grounds for summary judgment to the district court.  Therefore, we need not reach the issue of employment status, but instead may review the summary judgment on the additional grounds raised below but not addressed by the district court.  See Johnson v. Sawyer, 120 F.3d 1307, 1316 (5th Cir. 1997) (explaining that while summary judgment may be affirmed "on grounds not relied on by the district court, those grounds must at least have been proposed or asserted in that court by the movant").

## B.    Texas Arbitration Act

In EGL's motion to dismiss, EGL argued that even assuming the Agreement fell under the FAA's exception for transportation workers, the arbitration provision was nonetheless valid and

---

[3] For example, Davis stated in his affidavit that, in spite of the Agreement's terms, he was required to work exclusively for EGL and work at least forty hours per week.  The district court, however, concluded that Davis was "free to serve other carriers." Additionally, Davis asserted that EGL required him to attend meetings twice a week at the EGL office and to keep and use EGL communications equipment. These four statements, arguably the most significant indications of control by EGL, were either contradicted or simply not addressed by the district court.

enforceable under the Texas General Arbitration Act ("TGAA"), Texas Civil Practices and Remedies Code § 171.001, et seq.  We agree.

Where "an agreement contains a clause designating Texas law but does not exclude the FAA, the FAA and Texas law, including that state's arbitration law, apply concurrently."  Freudensprung v. Offshore Technical Servs., Inc., 379 F.3d 327, 338 n.7 (5th Cir. 2004).  Here, Section 7.03 of the Agreement contains a choice-of-law provision which designates Texas law as the law governing the Agreement.  Thus, because the Agreement's choice-of-law provision does not exclude the FAA, both the TGAA and FAA apply to the contract.

However, while both federal and state arbitration law may apply to a contract, these laws do not necessarily operate in harmony.  Specifically, the FAA will preempt any state laws that "contradict the purpose of the FAA by 'requir[ing] a judicial forum for the resolution of claims which the contracting parties agreed to resolve by arbitration.'"  Id. (quoting Pedcor Mgmt. Co. Welfare Benefit Plan v. Nations Pers. of Tex., Inc., 343 F.3d 355, 362 (5th Cir. 2003)).  In other words, "[f]or the FAA to preempt the [TGAA], state law must refuse to enforce an arbitration agreement that the FAA would enforce."  In re D. Wilson Constr. Co., 196 S.W.3d 774, 780 (Tex. 2006); see also Miller v. Pub. Storage Mgmt., Inc., 121 F.3d 215, 219 (5th Cir. 1997) ("The FAA preempts conflicting state antiarbitration law.") (emphasis added).

8

Here, the FAA does not preempt the TGAA because this case presents the situation where the FAA refuses to enforce an arbitration provision (assuming for the moment that Davis meets the exception for transportation workers) that the TGAA would enforce. Under the TGAA, a written agreement to arbitrate is generally valid and enforceable with respect to controversies that exist at the time of the agreement or arise thereafter. See TEX. CIV. PRAC. & REM. CODE ANN. § 171.001. Unlike the FAA, the TGAA does not exclude a specific class of employees from its coverage. See id. § 171.002. Thus, even if Davis were an employee of EGL, he would still be subject to arbitration under the TGAA. We therefore hold that the Agreement's arbitration provision is valid and enforceable under the TGAA, even if the Agreement is excepted from application of the FAA.

## C. Ambiguity and Inconsistency

In Davis's second argument, he contends that the arbitration provision of the Agreement is unenforceable due to ambiguities and inconsistencies in the Agreement. Because of these ambiguities and inconsistencies, Davis asserts, EGL cannot prove as a matter of law that Davis's claims fall under the scope of the arbitration provision. We address each of Davis's ambiguity arguments in turn.

Whether a contract is ambiguous is a question of law decided by the court. D. Wilson Const. Co., 196 S.W.3d at 781. In construing contract language, the primary objective is to discern

9

the true intention of the parties. J.M. Davidson, Inc. v. Webster, 128 S.W.3d 223, 229 (Tex. 2003). Ambiguity in a contract exists where the agreement "is subject to two or more reasonable interpretations after applying the pertinent rules of construction." Id. If, however, a contract can be "given a definite or certain legal meaning," no ambiguity exists. Id.

First, Davis contends that Section 6.07 of the Agreement, the arbitration provision, conflicts with Appendix II of the Agreement, which lists deductions from Davis's compensation. Section 6.07 of the Agreement states that "any claim or controversy arising out of or relating to this Agreement, or the breach thereof . . . shall be determined and settled in accordance with the Commercial Arbitration Rules of The American Arbitration Association." Appendix II, on the other hand, enumerates the expenses which EGL may deduct from Davis's compensation. In essence, Davis argues that while the arbitration provision requires "any claim or controversy" to be arbitrated, Appendix II inconsistently permits EGL to take self-help remedies for a variety of claims under the contract.

Contrary to Davis's assessment, we find only one reasonable interpretation and no inconsistency. Appendix II, rather than containing a list of claims, merely contains an agreed list of expenses that EGL may deduct from Davis's settlement payments. The intent and effect of Appendix II is simply to allocate onto Davis

10

the initial payment of Davis's contractual expenses and the risk of a mistake.  Any claim or controversy involving the deductions, for example a disagreement over the value, must still be arbitrated according to Section 6.07 of the Agreement, albeit at Davis's request rather than EGL's.  Such an arrangement is analogous to the typical employment compensation arrangement: the employer pays what the employer believes to be the correct compensation; any mistake in pay must be challenged by the employee.  Therefore, we conclude that no ambiguity or inconsistency exists between these two provisions.

Second, Davis alleges that the Agreement contains ambiguous and inconsistent notification requirements.  Section 6.07(a) provides: "Written notice of a demand for arbitration must be mailed to the other party . . . within ninety (90) days of the occurrence of the claimed breach or other event giving rise to the controversy or claim."  Thus, the provision places on both parties a ninety-day notice requirement of a demand for arbitration.  Section 4.07 of the Agreement states: "Contractor will not make any claim or bring any action against EGL for additional settlement monies unless Contractor notifies EGL in writing by certified mail of any discrepancies or additional claims within fifteen (15) days of settlement."  This section requires Davis to notify EGL of any alleged settlement errors within fifteen days of the settlement payment as a prerequisite to bringing a claim on the disputed

11

settlement.

Again, we conclude that only a single reasonable interpretation exists for these two provisions. Section 4.07 requires notice of erroneous settlement payments prior to demanding arbitration, while Section 6.07(a) requires notice of a demand for arbitration. It is clear that Davis must comply with both provisions to have a claim for settlement monies arbitrated. Although Davis may regard the notice requirement for arbitration as unnecessarily duplicative in light of the notice requirement for incorrect settlements, the two provisions are not ambiguous or inconsistent.

Given that there is only one reasonable interpretation of the Agreement and that its provisions do not conflict, we hold that Davis has not shown any ambiguity or inconsistency in the Agreement.

**D.    Unconscionability and Lack of Mutuality**

Finally, Davis asserts that the arbitration provision of the Agreement is unconscionable and lacks mutuality, and is therefore unenforceable.

The party opposing arbitration bears the burden of showing that the arbitration provision is unconscionable. In re FirstMerit Bank, N.A., 52 S.W.3d 749, 756 (Tex. 2001). The test for unconscionability assesses whether, in light of the parties' general commercial background and needs, the provision is so

unilateral as to have been unconscionable at the time of formation. Id. at 757. The objective is to prevent oppression and unfair surprise, not to disturb the allocation of risks stemming from one party's superior bargaining position. Id.

As to the reasons why the Agreement's arbitration provision is unconscionable, Davis points to the "employment status of the drivers [and] the ambiguous and unilateral nature of the arbitration clause." First, we have already addressed the issue of ambiguity and held that Davis did not show ambiguity in the arbitration provision. Second, Davis does not explain how one's status as an employee as opposed to an independent contractor would change the unconscionability analysis. Lastly, the mere existence of unequal bargaining power does not make an arbitration clause unconscionable, nor does the fact that limited exceptions exist which permit one party to seek judicial remedies instead of submitting to arbitration. See id. at 757-58 (holding that an arbitration clause that permitted the stronger party to litigate certain claims was not unconscionable). Thus, Davis has failed to satisfy his burden of showing unconscionability.

Lack of mutuality generally refers to the concept of consideration. See Fed. Sign v. Tex. S. Univ., 951 S.W.2d 401, 408 (Tex. 1997) ("A contract must be based upon a valid consideration, in other words, mutuality of obligation."), superseded by statute on other grounds, TEX. GOV'T CODE §§ 2260.001–.108, as recognized in

13

<u>Gen. Servs. Comm'n v. Little-Tex Insulation Co.</u>, 39 S.W.3d 591, 593 (Tex. 2001). Consideration is comprised of the "benefits and detriments to the contracting parties." <u>Id.</u> at 409. "The detriments must induce the parties to make the promises and the promises must induce the parties to incur the detriments." <u>Id.</u> In the present case, Davis did not point to any evidence of a lack of mutuality of obligations in the Agreement.[4] Therefore, we reject Davis's contention that the Agreement lacked mutuality.

## IV. CONCLUSION

For the reasons stated above, we AFFIRM the judgment of the district court.

AFFIRMED.

---

[4] We also note that mutuality of remedy does not apply to this case because specific performance is not an issue. <u>Fed. Sign</u>, 951 S.W.2d at 409 ("Mutuality of remedy is the right of both parties to a contract to obtain specific performance.")

14